

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VIRGIL L. SMITH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 03-612** |
| **RODNEY JACK STRAIN, ET AL.** | **SECTION "I" (1)** |

### ORDER AND REASONS

Plaintiff, Virgil L. Smith, a state prisoner, filed this lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff named as defendants Sheriff Rodney Jack Strain, Jr., Deputy Joseph Ciruti, Deputy Shane Parker, Warden Marlin Peachey, Captain Greg Longino, Captain Danny Jenkins, Chief Mike Core, Lieutenant Richard Lee, Lieutenant Jonas Haas, Sergeant David Hanson, Sergeant Gregory Burnthorn, Sergeant James Sandifer, Sergeant Lynette Juul, Sergeant John Callahan, Sergeant Stephanie Atkins, Corporal Justin Nelson, Corporal Jeffrey Craddock, Billy Joe Inman,[1] Deputy Henri Walker, Deputy Devon Palys, Deputy Chad Linden, Deputy Christina O'Hara, and all deputies who received or distributed mail since May 2002.

---

[1] Inman was identified in the complaint as "Deputy Emmite." However, plaintiff was allowed to amend the complaint to correctly identify Inman. Rec. Docs. 12 and 13.

All of plaintiff's claims have been dismissed except for his excessive force claims against Deputy Shane Parker, Billy Joe Inman, and Sergeant John Callahan.[2]

Defendants Parker and Callahan have filed a Motion for Summary Judgment.[3] Plaintiff has filed a memorandum in opposition to that motion.[4] In addition, plaintiff has filed a Motion for Partial Summary Judgment.[5] In that the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge,[6] the Court will now rule on those motions.

Standard for Summary Judgment

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

---

[2] Rec. Doc. 18.

[3] Rec. Doc. 36.

[4] Rec. Doc. 37.

[5] Rec. Doc. 34.

[6] Rec. Doc. 22.

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id. Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

Exhaustion of Administrative Remedies

In their motion for summary judgment, defendants contend that plaintiff's remaining claims against them should be dismissed on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory in cases covered by § 1997e(a). Porter v. Nussle, 534 U.S. 516, 524 (2002).

The United States Supreme Court has held that "the PLRA's exhaustion requirement applies to *all* inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532 (emphasis added). The United States Supreme Court has further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The United States Fifth Circuit Court of Appeals has noted that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

If an inmate files in federal court an *in forma pauperis* complaint containing claims that have not been exhausted through available administrative remedies, those claims should be dismissed

without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998).

In support of their motion for summary judgment, defendants have submitted an affidavit of Deputy Warden Gregory Longino regarding the applicable Administrative Remedy Procedure. Longino stated in pertinent part:

1. I am a Deputy Sheriff of St. Tammany Parish and currently hold the position of Deputy Warden/Director of Inmate Affairs of the St. Tammany Parish Jail and because of my duties I know the facts set forth in this Affidavit of my own personal knowledge.

2. I have been employed by the St. Tammany Parish Sheriff's Office since July of 1990. I am POST (Peace Officer Standards and Training) certified in corrections and basic law enforcement. I was promoted to Deputy Warden/Director of Inmate Affairs in 1996.

3. The St. Tammany Parish Jail has an administrative grievance process called the Administrative Remedy Procedure (ARP) in place and is available to all inmates incarcerated at the St. Tammany Parish Jail.

4. All inmates are entitled to use the jail's administrative remedy procedure, including Department of Corrections inmates, parish jail inmates, and pre-trial detainees.

5. A summary of the jail's administrative remedy procedure may be found in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate who is booked into the St. Tammany Parish Jail. I have certified and attached a true copy of the summary of the administrative remedy procedure as it appears in inmate handbook. A copy of the complete administrative remedy procedure may also be found in the jail law library wherein access to the procedure is available to all inmates.

6. To initiate the grievance process, an inmate must fill out the inmate grievance form, which is made easily accessible to all inmates at the jail. In lieu of the form, an inmate may submit a written communication containing the words "This is a grievance through the ARP."

7. Under the grievance procedure available at the time of the alleged incident, a grievance must be filed within thirty (30) days from the date the incident giving rise to the grievance occurred. Any grievance filed more than thirty (30) days after the incident is rejected as untimely.

8. As the Deputy Warden/Inmate Affairs Director, I am the First Level Respondent in the grievance process. As the First Level Respondent, I must respond to the inmate's grievance within fifteen (15) days from the date the request is referred to me. This step is designated as the First Step Review.

9. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal to the Warden within five (5) days of the inmate's receipt of the response by the First Level Respondent. This step is designated the Second Step Review. The Warden has twenty (20) working days to reply to the appeal.

10. If an inmate does not like the results of the Second Step Review, the inmate may appeal to the Sheriff within five (5) days of the inmate's receipt of the reply. The Sheriff has forty (40) working days to reply to the appeal. An inmate may only file suit if he or she is not satisfied with the final level of review.

11. The inmate, Warden, or Sheriff may request a five (5) working day extension of time in responding to the grievance.

12. If an inmate does not receive a response to a grievance or appeal within the time allowed by the First Level Respondent, Warden or the Sheriff, an inmate would still be required to follow through to the next step of the grievance process.

13. I have certified and attached a copy of the blank forms used in the administrative remedy procedure, which include the inmate grievance form used by inmates to initiate the administrative grievance process, the form used for the First Level Respondent's response to the grievance, the form used for the Warden's Review Decision, and the form used for the Sheriff's Review Decision.

14. As Deputy Warden/Director of Inmate Affairs, I am familiar with the above captioned lawsuit and know of my own personal knowledge that inmate Virgil Smith did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his claims brought in this lawsuit.

15. Inmate Virgil Smith never filed a grievance concerning his claim that excessive force was used on him by Billy Joe Inman, Deputy Shane Parker, or Sergeant John Callahan while incarcerated at the St. Tammany Parish Jail prior to filing his lawsuit.

16. Inmate Virgil Smith never filed a grievance regarding his claim that he was not taken to the medical department after the alleged incident.

17. Inmate Virgil Smith did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his excessive force claims.[7]

Defendants also submitted with their motion for summary judgment a copy of plaintiff's jail file.[8] Those records substantiate Longino's assertion that plaintiff did not exhaust his administrative remedies with respect to the excessive force claims asserted in this lawsuit. Although those records reflect that plaintiff filed at least one grievance, that grievance dealt with plaintiff's placement in isolation, not with the use of excessive force.

The Court notes that, on January 16, 2003, plaintiff did submit a "St. Tammany Jail - Request Form" alleging that Billy Joe Inman, identified in the request as "Officer Emmite," "gas[sed]" plaintiff for no reason. However, that request form did not comply with the administrative remedy procedure, which, as noted above, requires that a grievance be submitted on the designated grievance form (which it was not) or contain the words "This is a grievance through the ARP" (which it did not).[9] Accordingly, the request form cannot be considered as having been filed pursuant to the applicable administrative remedy procedure.

---

[7] Rec. Doc. 36, Attachment 4.

[8] Rec. Doc. 36, Attachment 1.

[9] Rec. Doc. 36, Attachment 4, p. 2, ¶ 6; see also id. at p. 9.

Moreover, even if the request were considered as a first-step grievance, that would not change the result in this case. The mere filing of first-step grievances does not *exhaust* administrative remedies, as is required by federal law. "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)). A plaintiff's administrative remedies are not exhausted unless he has pursued the grievance remedy through conclusion of a multi-step administrative remedy procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

According to Longino's affidavit, plaintiff did not pursue his claims through completion of the administrative remedy procedure.[10] Moreover, plaintiff does not allege, much less put forth rebuttal evidence to demonstrate, that he pursued his grievances regarding excessive force to the second or third steps. In fact, plaintiff states in his federal complaint that he did not complete all steps in the administrative remedy procedure.[11] While plaintiff contends that he did not proceed to the appellate stages of the process because he never received a response to his grievance, that excuse is insufficient. Captain Longino's affidavit establishes that when an inmate fails to receive a response to a grievance within the time allotted, the St. Tammany Parish Jail grievance process requires that the inmate proceed to the next level of the administrative remedy procedure.[12] To allow plaintiff, who clearly did not pursue a grievance through all three steps of the applicable

---

[10]   Rec. Doc. 36, Attachment 4.

[11]   Rec. Doc. 1, § II(C)(2).

[12]   Rec. Doc. 36, Attachment 4, p. 3, ¶ 12. Additionally, the grievance form itself includes the following instruction: "If you do not hear from the 'First Respondent' within 20 days you may file a Request for a Warden's Review within the following 5 days." Id. at p. 10.

administrative remedy procedure, to proceed directly to federal court would undermine the congressional intent of § 1997e(a).[13]

Considering defendants' evidence establishing that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, as well as the fact that plaintiff has not met his burden to demonstrate that a genuine issue of material fact exists regarding the exhaustion issue, the Court finds that Deputy Shane Parker and Sergeant John Callahan are entitled to summary judgment pursuant to Fed.R.Civ.P. 56 and 42 U.S.C. § 1997e(a).[14] Accordingly, the motion for summary judgment filed by Deputy Shane Parker and Sergeant John Callahan is **GRANTED**, and the claims against those defendants are **DISMISSED WITHOUT PREJUDICE**, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.

The Court notes that the remaining defendant, Billy Joe Inman, did not join in the motion for summary judgment; however, he could not have done so because he has never been served. Nevertheless, in light of the foregoing, it is clear that § 1997e(a) would also bar plaintiff's claim

---

[13] The United States Supreme Court has noted:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002) (citations omitted).

[14] In that the Court agrees that the motion should be granted based on § 1997e(a), defendants' alternative grounds for summary judgment need not be addressed.

against Inman. Accordingly, the Court hereby places plaintiff on notice that it is considering entering summary judgment *sua sponte* on this claim in favor of Inman on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.[15]  If plaintiff opposes that proposed action, he is **ORDERED** to file a memorandum in opposition to the entry of summary judgment on or before September 1, 2004.

As to plaintiff's motion for partial summary judgment, that motion is **DENIED**.  In that plaintiff failed to comply with the requirements of 42 U.S.C. § 1997e(a), he is not entitled to summary judgment.

New Orleans, Louisiana, this seventeenth day of August, 2004.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE

---

[15] "Federal District Courts are empowered to enter summary judgment *sua sponte* so long as the losing party has ten days notice to come forward with all of its evidence in opposition to the motion." Harken Exploration Co. v. Sphere Drake Insurance PLC, 261 F.3d 466, 477 (5th Cir. 2001) (internal quotation marks and citations omitted).